Good morning, Your Honor, and good morning to the Court. My name is David Gilmore. I'm here on behalf of the Castaic Entities, which are the appealing entities in this appeal before the Court. The principal issue, it seems to me, is a review of the District Court's conclusion under the Kona land case that this appeal is moot. And in reviewing the Kona land case and the cases that followed, I think the issue is whether or not the Kona land case has established some kind of a bright line test. Before we get to Kona land, what about Olive Street and Income Property Builders? Aren't they almost right on all fours? Well, I don't believe they are all on all fours, Your Honor, because of the nature of the way this transaction took place. Well, you're talking about the Nevada statute and whether one person can offer it. Well, it's a combination. Yeah, it's a combination of the Nevada statute because we have the fractionalized interest here. But let's move a little bit forward. What I struggle with in this, there was no stay in this matter. You've got Judge Jones decided the issue about the Nevada statute some time before any of this occurred, and you just never preserved your right here. Why isn't this moot under Olive Street? Well, Your Honor, under the cases where the Ninth Circuit has analyzed the issue of mootness, the question has always come down to whether or not this court or a remedy can be fashioned. What the Kona court did was, back in 1988, the Kona court was in Olive Street for a minute. In that case, the facts, as I say, are virtually identical, and the reality is that the underlying orders have become final because there was no stay posted. When that occurs and the repeal period is over, how can we do anything? Even if you're right about, say, Judge Jones was inaccurate and all that stuff, isn't this case final? It's done. Well, his case is not final, Your Honor. There's no final order in the McKnight litigation that's at issue. Say that's true, but in terms of the foreclosure, why isn't that case over? Because you didn't stay it. Because the foreclosure that was conducted in this case was conducted under California law as a private sale, nonjudicial foreclosure, and the creditor, DACA Castaic, is not a good-faith purchaser here. They're not a bona fide purchaser. But the underlying bankruptcy cases have now been dismissed, and there's no appeal from those dismissal orders. Is that right? I'm sorry, say that again, Your Honor. The underlying bankruptcy matters are dismissed now? Yes, that is correct. And there's no appeal from those dismissal orders? That is correct. So what's the case or controversy that remains for which some relief can be fashioned? The case in controversy here was the granting of the relief from stay that allowed them to proceed to conduct the foreclosure. You agreed to the dismissal of the bankruptcy case. You joined in asking for it. Because we were already appealing the issue of the relief from stay to conduct the foreclosure. So when the court granted the relief from stay here to conduct the foreclosure, we, of course, believe that the court did so granting relief to somebody who didn't have standing to proceed to conduct the foreclosure. Of course, standing can be raised as an issue at any time in a proceeding to establish that that person didn't have the right to proceed. Right, but getting back to the dismissal of the bankruptcy case, the stay is a stay pending a bankruptcy case. If there is no bankruptcy case, even if you're right, how could we have a stay pending a bankruptcy case that is over indisputably and without objection? What would we be saying to the bankruptcy court? Oh, you should have stayed this, so stay it now pending what? No, Your Honor, I think we understood the question. What we're saying to the discord is that under the circumstances, this case is not moot because the party who continues to hold title of the property to this very day is still DACA cast egg. Right, but what would we actually do? Send it back to the bankruptcy court and say what? We would go back to the bankruptcy court to reopen the bankruptcy. We would assess the issue. But you didn't appeal the closure of the bankruptcy case. How could we tell the bankruptcy court they made a mistake in closing the case when you asked them to close it? Well, I didn't ask them to close it, Your Honor. What happened was the trustee moved for a dismissal, and I didn't oppose it. Right, well, but it's been granted. So that's the Olive Street situation on virtually identical facts. The court there determined that it doesn't serve any purpose to determine at this point, which is the point that you're at in litigation, whether the bankruptcy court properly lifted the automatic stay because the dismissal of the bankruptcy court rendered the appeal moot. So how is your case different factually from Olive Street? The court, this case is factually different because the dismissal, if you will, of the bankruptcy was based on the fact that the property was no longer in the bankruptcy where it belonged so that my client would have had the opportunity, as a Chapter 11 bankruptcy file, to pose a plan to get out from under the obligations of the debt. And it seems to me that under the circumstances that this court, you can go back to the bankruptcy court and say, look, this case should have never been dismissed because that property should never have been out of the bankruptcy. But, counsel, with respect, we've all raised the same point. You agreed that the bankruptcy case should be dismissed. There was no appeal. This is right on all fours for Olive Street. Based on what authority could we tell the bankruptcy court to reopen a case which falls under Olive Street? And you agreed to. You agreed to the dismissal. You didn't oppose it. How could we possibly ask the court, or not ask, direct the court to reopen the case? Do you have any authority, any case law, that suggests that we could do what you just have asked us to do? The case law that I have, Your Honor, relates to the power of the court to determine whether this is moot. In other words, as was stated in the Baker and Drake case, well, you can unscramble the egg. But that's a prudential mootness analysis you're talking about. We don't even get to that, really, based on Olive Street. We don't need to get to that. This is the dismissal's final. It's over. There's no time for appeal. There was no stay granted. You admitted that it should be terminated. It was. How can we unscramble that egg? We like eggs, but we don't like them that way. I prefer mine over easy, to be honest. Perhaps we'll call this the over easy argument. How do we deal with this? I think it's a simple matter that the relief from stay should never have been granted. The property should have never been taken out to allow there to be the nonjudicial foreclosure. Why didn't you seek a stay? If you felt as you do, why didn't you say, we want this stayed while we appeal this? Well, I think, Your Honor, to be fair, at the time that was going on, there was a lot of other things going on, including we still have, of course, the pending litigation in Nevada in front of Judge Jones. That time we had the complex litigation going on in California. And those aren't really before us here. That's true. So whatever you got going with Judge Jones and whatever the success of that, this matter is now over under Olive Street, isn't it? Your Honor, again, I submit I don't believe that it is. I don't think that Olive Street is. And what authority do you rely upon for that? I'm sorry? What authority? I'm relying on the cases that have followed the Konoland case, including. . . The Konoland is prudential mootness. That's not what I'm talking about. I'm talking about Olive Street. Okay. I understand what the Court is saying. But the Olive Street court case doesn't present a situation where the creditor, in this case, is the one that's in control and was in control. There was no court supervision of what happened in the sale in this case. And so it seems to me that that distinction allows this court to use the to look at the mootness doctrine and say that this case, this egg can be unscrambled by going back to the bankruptcy court. Maybe this will be moot, but looking at a couple of the merits issues, you say in your brief that the second foreclosure is not before the court. The second foreclosure, as I understand it, being the one where they went and got the, what is it, the 51% majority affidavit. If there had been a problem with the first foreclosure, why is the second, which did comply with that statute, not before the court? Why would we not say, okay, maybe they did that wrong, but now they've fixed it and the result was the same? Well, as an initial matter, of course, that second foreclosure took place after this appeal was pending. But the short answer is under the California majority action affidavit statute, 2941.9, you have to get authority of the, you have to put all the beneficial owners on notice. There was no notice given. What they did in that situation was they said, well, we already own 51%, so we can just go record the majority action affidavit on our own without consulting, without notifying any of the other parties. Is that in the record? I'm sorry? I was under the impression that they did notify the parties. They did. Well, first of all, of course, that second foreclosure is not in the record. The first foreclosure, though, is in the record that there is, what was challenged in that first foreclosure, amongst other things, the majority action affidavit under 2941.9 is supposed to be recorded at the time the loan is made. There was never any recording of any documentation in California under the majority action affidavit, and the record is devoid of any example of a majority action affidavit at any time up to the time of the foreclosure. Did the minority owners get their share of the proceeds? There were no proceeds, which is part of the significance here, because the foreclosures done under California law, which is a power of sale, nonjudicial foreclosure, they made a credit bid. No money changed hands. Now, to be fair, in the record, there is a purchase agreement that led to DACA-CASDAIC's ability to claim that they had a right to proceed, where they were supposed to pay $200,000 and made in advance a loan to cover their past few property taxes. As my understanding, $200,000 was paid. Well, the minority shareholders, or whatever you want to call them, the minority stakeholders, however you construe the validity of the Nevada action, were part of the credit bid, if you will. I know you say they didn't want to be, but whatever they were entitled to didn't go away, right? Well, I would disagree with – If there was 100 percent of the owners represented, at least arguably under Judge Jones's ruling, I know you don't agree with it, and there was a credit bid, then the same entities or people who had a stake in the land still have the results of whatever the credit bid produced, which I assume in this case was the land. So they would have their pro rata interest in the land. They weren't, in quotes, cheated out of whatever the majority got under Judge Jones's analysis of Nevada law, right? I believe that that would be correct. I think Judge Jones, over the course of time in this proceeding, his theory, his thoughts have evolved a little bit, but I think those folks would be considered at best tenants in common. The issue, it seems to me, is either under 645B.340 in Nevada or under 2941.9 in California, those minority owners were entitled to get notice and an opportunity. I get the notice part. I'm just saying as a practical fact, whatever the majority interest holder, be they tenants in common or whatever, got through their credit bid, the minority interest holders got their pro rata share. Well, I hope that's the case. It's not entirely clear from the record that that's true. Yeah, but you don't know of anything to the contrary, right? Not at this point. Okay. I'd like to reserve a little bit of time. That would be great. Good morning, Your Honors. Dean Kirby and Kimberly Deedy, Kirby and McGuinn, appearing for DACA-Castaic LLC. Are you going to be splitting time? We are not. Okay. She's just watching to make sure you don't blow it. She is largely responsible for writing that brief, and her name is not on brief. And if this decision is published, I hope her name is included among counsel appearing here because she's an important part of the team. The very first thing that I need to tell the court, which spent most of its time on Olive Street, is I have a little egg on my face on Olive Street. And the reason is that, and I was actually... This is not a scrambled egg, right? No. Is it over easy? It's over easy. Okay. When I found Olive Street, I was sort of triumphant because this is one of those issues that's very, very hard to research the way we do research now because all of the terms are so common in bankruptcy cases, and there are so many, that when I actually found Olive Street, an Eighth Circuit opinion, obviously, I said, aha. Then when I was preparing for argument in this case, I was reviewing the cases that were cited by the debtors, by Mr. Gilmour, for the first time in their reply, and I'm embarrassed to say that that review led me to Ninth Circuit authority on this point that I was unaware of and hadn't included in DACA's brief. A bankruptcy appellate panel decision, which is cited in the reply, is N. Ray Davis, and that, in turn, cites the Ninth Circuit decision, which is N. Ray Income Property Builders, 699 F. 2nd 963. And an income property builder, slightly different, a relief from stay was granted and a foreclosure sale happened, but a creditor filed a motion to reinstate the stay. And that motion was denied, and the denial was appealed from, and later the bankruptcy case itself was dismissed. The Ninth Circuit held that the bankruptcy case dismissal mooted the appeal. And remember, as the court has pointed out, the debtors' whole argument here, what they asked for, there's no express finding of good faith by the bankruptcy court, and so the remedy is to remand to the bankruptcy court to examine the facts and determine whether there was good faith, something that an appellate court can't do. And the income property builder's opinion says, and I quote, quote, a remand by us to the bankruptcy court would be useless. If we had some power to restore the bankruptcy proceeding, the situation would be different, but there is no appeal from the order dismissing it. That's what the Ninth Circuit had to say in that case. Now, the other case cited by the debtors for the first time in their reply that I took a look at is In Re Universal. Let me just ask this question. I had also cited income property builders, and it seems to me for purposes of our discussion, however you construe the Eighth Circuit case in Olive Street, this one also covers this fact, right? I agree. You're not arguing that you were wrong about it being moot. No, I'm just sorry I didn't find it the first time around. That's the egg. It meant that it went against you and you were. Oh, no, no, no. For a second you had Tabasco sauce. No, that would have been Tabasco sauce, no. And then the Universal Farming Industries case that's cited for the first time by the debtors in their reply. That case allowed, and this is why they cited, an adversary proceeding between two creditors over lien priority to continue after the underlying bankruptcy case was dismissed. But the opinion explains why. It says, again, quote, when the issue being litigated directly involves the debtor's reorganization, the case is mooted by the dismissal of the bankruptcy. And in support of that observation, it cites income property builders. So unless the debtor can overcome this threshold issue, we don't need to go any further. And I think the other issue that can be characterized as a threshold issue on this appeal is what the Ninth Circuit's mortgages limited case describes itself as a bright line rule. Unless the appellant has diligently sought a stay pending appeal, the completion of a foreclosure sale renders a bankruptcy appeal moot. And, you know, there's good reason for that rule. I mean, seeking a stay creates a record for the court to review about the effect of the order, what happens, the facts surrounding it. The debtors here made no attempt, as the court has already observed, to obtain a stay. And equity, if you seek an equitable relief by saying, asking this court to say that this appeal is equitably moot, you've got to be diligent. Equity requires diligence on the part of someone seeking equitable relief. They weren't diligent. They had 26 days after the court ruled. The bankruptcy rules themselves provide a time, a dead time after a stay order is issued before a foreclosure sale can happen. Correct. They did nothing. Now, it's interesting that in response to the court's question, Mr. Gilmour said, well, we didn't oppose that dismissal because the property was gone. Well, you know, that was the point, wasn't it? They did not want the property to be gone. And, therefore, they should have been attempting to stop the foreclosure sale by looking to obtain a stay. And knowing that success on their appeal, had a stay been obtained, would restore the property to the, or even if a stay hadn't been obtained, if they were successful in their appeal, would restore the property to the debtor in possession, they should have asked the court hold off closing this case until the appeal is decided. It's not particularly true here. I mean, you've got big tracts of land held for speculation on a continually booming real estate economy. Everything was the land. There was nothing else. And once the land was gone, there's nothing to adjudicate, right? Well, there would have been something to adjudicate had the property gone back. Oh, right, right, right. I'm just saying once it's gone, there's nothing left. Well, what they're all saying to the court is bring the property back. And my point is if there's no bankruptcy case, there's no point to bring the property back. There's no stay to restore. There's nothing to do because there's no bankruptcy. Now, there's one other thing that I really think is important to tell the court about, and the court may not want to hear about it because I think these are two threshold issues that we don't need to get past. Do you agree that if your analysis is correct and the income property builder's controls, we don't have to consider anything else? That is correct. That is correct. And so feel free, as I know you will, to shut me up about this because it goes beyond these two what I consider to be critical threshold issues. In that regard, that relates to a newly land and the interpretation of that case that was cast on it by Judge Otero. Otherwise known as CONA. Yes. A newly CONA. CONA, correct. And Judge Otero didn't decide this case on constitutional mootness, which is what we're talking about with the dismissal of the bankruptcy. There's no way for the court to grant relief, so no case or controversy, constitutional mootness. He didn't decide it on equitable mootness. He decided it on statutory mootness. And the basis for that was the notion that CONA held that Section 363M of the Bankruptcy Code applies in relation to the issue of mootness and good faith as a part of that issue of mootness. And I did not brief 363M to Judge Otero either time. I didn't brief it here, I don't believe. So you were on the CONA case too? Yes. No, no, no, no. I didn't brief 363M to Judge Otero in this appeal. Oh, in this appeal, okay. Yes. And the reason that I didn't is because 363M says specifically that it relates to sales under Sections 363B and 363C. In other words. Which is not the case here. Not the case here. In other words, bankruptcy sales of bankruptcy estate property. Well, that's quite a bit different. Now, what I want to point out to the court, I mean, because if there's a published opinion here or even if there's not these days, you know, there's an important thing about CONA. And that is that Judge Otero assumed that CONA held that 363M applies to this appeal. And CONA did not so hold. CONA speaks in terms of a general bankruptcy rule of mootness. Bankruptcy mootness. That's what that appeal says. I take it you're raising this issue so that in the event there's publication or even an unpublished disposition to clarify that this is a constitutional mootness analysis? Yes. And I'm a bankruptcy specialist, branded and certified, and this issue has been troublesome because it is taking a statute that obviously doesn't fit and putting it into a context that doesn't apply, as your honors pointed out. Just as a matter of policy, if this case is constitutionally moot, how could our discussion of the 363M matter be anything other than dicta? I totally agree with that, your honor. Which is not to say that dicta doesn't mean a lot in our circle. And, you know, again, I'm prepared to be shut up on this point. But what I want to say is that bankruptcy mootness I think obviously does require good faith as a component of it. You know, if you're going to a court and saying this case is equitably moot, well, if the record below shows that there was bad faith in connection with the sale, how can it be equitably moot? Well, then you're going to get into the burden of proof, and who has to prove good faith or does someone have to prove bad faith? It would be easier to avoid that problem if one could. Well, exactly. And here's why I say that this relates to that exact issue. 363M relates to bankruptcy sales of bankruptcy estate property. So you're going to the court and asking the court, please approve this sale. Usually before the sale happens, but approve this sale. Here are the terms of the sale. Here are the bidders. Here's evidence to indicate the bidders are disinterested and so forth. It is natural in the context of a bankruptcy sale that we have evidence about the good faith of the bidders and the arm's length nature of the sale negotiation process. And so it's natural that 363M talks about good faith and that the bankruptcy court make a finding of good faith at the time the property is sold. But here, of course, we have a foreclosure sale that happens after, and sometimes a long time after, relief from the stay is granted. The bankruptcy court has no way to examine whether the sale happens in compliance with, well, whether there was bad faith conduct in relation to the sale itself. And we're not talking here under Suchi, another Ninth Circuit decision, about a bad faith in the origination of a loan, bad faith in the acquisition of a loan. We're talking about bad faith in relation to the conduct of the sale itself. And that sale itself, if it's a foreclosure sale, happens after the entry of the order for relief from the automatic stay. So under those circumstances, since Judge Jones made his ruling on the nature under Nevada law, under the nature of their law, which preceded this by some time, is irrelevant, basically. Is that your position? Well, it's certainly not irrelevant that now there's a judgment out there, which is part of our request for judicial notice, saying that this foreclosure was conducted properly under California and Nevada law. I mean, that's not irrelevant. No, of course not. And one last thing. Judge Wilkin, you had asked whether there was anything in the record to show that these beneficiaries received notice of the majority action affidavit. If you look in the record, and, again, it's our request for judicial notice. That's a qualified document. Or, excuse me, a judicial notice document. It's a recorded document. That is in our request for judicial notice at pages 14 and 15. So I've exceeded my time, and I thank the Court for its indulgence on what it may consider to be an irrelevant argument. You actually haven't exceeded your time, but we thank you for your commentary. Any questions by my colleagues? No, I just want to point out that you had indicated that your co-counsel's name isn't on the brief, and so if you would like her name reflected, I don't know whether it's going to be publication or not. You might want to leave that with the deputy. We left both cards with the clerk, Your Honor. Okay. Thank you very much. Thank you very much. So, Counsel, you have a little time to respond. I have a little, and hopefully I won't take it all. Okay. For once, I want to stand up here and say that I agree with Mr. Kirby, that 363M that the Court used to make this determination was an improper analysis because, of course, 363M does deal with sales that are done to the court, which is not what happened in this case, and I think that's one of the significant points in this case. DACA-CASDA substituted itself in as the trustee under the Deeds of Trust so that it could conduct this sale, which was not supervised by any court. They did a nonjudicial foreclosure under California law, and the Deeds of Trust themselves are governed by California law. They did not comply with the rules in order to do that. The notice of the majority action affidavit is basically, here it is, we filed it. That's essentially what they're saying. The sum total of all this is this is, in fact, a very unusual set of facts and an unusual set of circumstances because of the fractionalized interest, because of the disputes between the Nevada and California law. Just to get back to the beginning here, do you agree that Income Property Builders controls this case? I do not. Do not. And why? Because I believe that the other precedents of this court that deal with the ability, I love the language, that's why I like it, about unscrambling the egg or putting Humpty Dumpty back together again, that those cases would. . . It's still an egg. I'm sorry? It's still an egg. Yeah, it's still an egg, would control the court's analysis ultimately. Any questions? Thank you both for your argument. Thank you very much. Very, very helpful. Interesting. I actually like bankruptcy law, so it's kind of interesting stuff there. Thank you both. Very well. The case just argued is submitted, and we will now hear argument in the final case for the day.
judges: M. Smith, Nguyen, Wilken